# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JONATHAN MAXWELL | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:20-CV-3581-S |
| MESQUITE INDEPENDENT SCHOOL DISTRICT | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Brief ("Motion") [ECF No. 13]. For the reasons that follow, the Court **GRANTS** the Motion.

### I. BACKGROUND

Plaintiff Jonathan Maxwell ("Plaintiff") was an "ISS Instructional Aide," an at-will employee, of Defendant Mesquite Independent School District ("Defendant" or "School District") from February 1, 2019 until he was terminated on August 4, 2020. Am. Compl. ¶ 5 [ECF No. 12]. Plaintiff alleges that after he made three social media posts, the School District's Assistant Superintendent for Personnel Services, Mary Randall ("Assistant Superintendent Randall"), informed him that he had been reported for sharing "racist and bigoted posts." *Id.* ¶¶ 8, 10. Plaintiff denied that his posts were racist or bigoted, and told Assistant Superintendent Randall that he had a First Amendment right to make political posts. *Id.* ¶ 10. According to Plaintiff, none of his posts can be described as racist, bigoted, or obscene. *Id.* ¶ 8. Rather, he asserts, they were "political posts" that "dealt with race."[1] Am. Compl. ¶¶ 8, 10. Plaintiff claims that his posts "centered on racial tensions" and "matters of public concern," and were made during an

---

[1] The actual posts are not part of the record. Plaintiff has not described or included the contents of the posts in his Amended Complaint or Plaintiff's Response in Opposition to Defendant's Motion to Dismiss for Failure to State Claims [ECF No. 19] ("Resp.").

"extraordinary" time when "[s]ocial and racial unrest in the United States during the summer of 2020 triggered protests and riots across the country." *Id.* ¶¶ 8, 18.

Plaintiff claims he met with Assistant Superintendent Randall and Kellie Haddock ("Haddock")—whose official title or authority has not been indicated—on August 4, 2020 regarding his posts. *Id.* ¶ 11. During the meeting, he "was advised that he was being terminated for 'policy violation: social media use.'" *Id.* Later that day, Plaintiff received a letter notifying him that he was "officially terminated . . . due to insubordination/policy violation." *Id.* ¶ 12. Plaintiff does not specify who authored or signed the termination letter. *See id.* He alleges that Defendant's Board of Trustees ("Board") adopted policies for employee termination in their Employee Handbook, which was distributed to employees by Superintendent of Schools David Vroonland ("Superintendent Vroonland"). *Id.* ¶ 13. Plaintiff further claims that the Board "delegated the authority of employee termination to [Assistant Superintendent] Randall and [Superintendent] Vroonland" and that the Board "ratified the policy to terminate Plaintiff in violation of Plaintiff's protected rights." *Id.*

Based on the foregoing allegations, Plaintiff asserts a single cause of action under 42 U.S.C. § 1983 ("Section 1983"), claiming he was terminated because of his social media posts and retaliated against as a public employee for exercising his right to free speech. *Id.* ¶¶ 16-17.

Plaintiff filed his Original Petition in the 191st Judicial District of Dallas County, Texas, on October 20, 2020. *See* ECF No. 1 Ex. 2. The suit was then removed to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1331 on December 7, 2020. *See* ECF No. 1. On December 16, 2020, Defendant moved to dismiss Plaintiff's Original Petition, and Plaintiff filed his First Amended Complaint on January 20, 2021. *See* ECF No. 4; ECF No. 12. Defendant now moves to dismiss Plaintiff's First Amended Complaint for failure to state a

2

claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 13. In his Response to Defendant's Motion, Plaintiff requests that the Court grant him leave to file a second amended complaint if the Court determines that Plaintiff has failed to state a claim. Resp. 15.

## II.　　LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). However, the court may also consider documents outside of the pleadings if they

fall within certain limited categories. First, the court can "rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, the "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Third, "[i]n deciding a [Rule] 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III.   ANALYSIS

Plaintiff brings his sole claim against Defendant under § 1983, alleging Defendant violated his constitutional rights under the First Amendment. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts showing (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Defendant moves to dismiss Plaintiff's § 1983 claim, arguing that Plaintiff has failed (1) to adequately allege an official policy or custom that resulted in a deprivation of his constitutional rights; and (2) to sufficiently plead a substantive element of a First Amendment retaliation claim. The Court concludes Plaintiff has failed to adequately allege that Defendant's actions, through its duly enacted policies or customs promulgated by its policymakers, were the motivating force behind any alleged constitutional violations. Alternatively, Plaintiff fails to sufficiently plead that his social media posts were on a matter of public concern, a substantive element of a First Amendment retaliation claim.

### A. *Municipal Liability Under § 1983*

A municipal entity, such as an independent school district, cannot be held vicariously liable under § 1983 for the individual acts of its employees. 42 U.S.C. § 1983; *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citations omitted). Therefore, to impose § 1983 liability on the School District, Plaintiff must sufficiently allege "a policymaker; an official policy [or a custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)).

#### (1) *Policymaker*

"Under Texas law, the final policy-making authority in an independent school district rests with the district's board of trustees." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (citing *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)). Plaintiff alleges that Assistant Superintendent Randall and Superintendent Vroondland were also

5

Defendant's policymakers because the Board "delegated the authority of employee termination to" them. Am. Compl. ¶ 13. But the Board's Employment Practices Policy only delegates the final authority to employ and dismiss at-will employees to the "Superintendent." ECF No. 20 Ex. A.[2] Therefore, the Board and Superintendent Vroonland—not Assistant Superintendent Randall—were the only policymakers capable of promulgating an official policy of Defendant for purposes of the Court's § 1983 analysis.

### (2)  *Official Policy*

Plaintiff only sued Defendant, an independent school district. Therefore, he must establish a basis for municipal liability pursuant to § 1983. Section 1983 liability must rest on official policy, not the policy of an individual officer. *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). For purposes of municipal liability, the Fifth Circuit defines "official policy" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Plaintiff does not allege any widespread unconstitutional custom or practice within the School District of depriving employees of their First Amendment rights. Nor does he allege that any other employees were deprived of their constitutional rights. Therefore, the Court will determine wether there are factual allegations that support the first definition of official policy.

---

[2] The Court relies on Defendant's Employment Practices Policy, attached as Exhibit A to the Appendix in Support of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss for Failure to State Claims [ECF No. 20], because that document was incorporated into the Amended Complaint by reference. *See Dorsey*, 540 F.3d at 338; *see also* Am. Compl. ¶ 13.

Plaintiff identifies two possible official policies: a "social media policy" and "the policy to terminate" him. Am. Compl. ¶¶ 11, 13.

First, Plaintiff alleges he was informed at the August 4, 2020 meeting that he was being terminated for violating a "social media policy." *Id.* ¶ 11. But he does not describe the policy or its relationship to the constitutional violation of which he complains. *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." (citation omitted)); *Piotrowski*, 237 F.3d at 580 ("specification of the policies [being] challenge[d] [cannot be] vague"). Moreover, Plaintiff fails to allege any facts indicating that the social media policy was Defendant's official policy. *See Bennett*, 728 F.2d at 769 ("Liability must rest on official policy, meaning the [municipality]'s policy and not the policy of an individual official."). Indeed, Plaintiff admits in his First Amended Complaint that he is unsure of what the policy actually is. *See* Am. Compl. ¶ 12 ("Defendant never elaborated . . . what policy Plaintiff violated."). Thus, Plaintiff has failed to adequately identify a specific official policy of Defendant with respect to social media.

Second, Plaintiff claims that "the policy to terminate" him was an official policy of Defendant that "violat[ed]" his "protected rights" under the First Amendment. *Id.* ¶ 13. A decision to terminate Plaintiff, if it is officially adopted and promulgated by Defendant's policymaker—the Board or Superintendent Vroonland, *see supra* Section III.A.(1)—qualifies as an official policy of Defendant. *See Webster*, 735 F.2d at 841.

Plaintiff has not pleaded facts identifying who promulgated the decision to terminate him. Plaintiff merely indicates he "was advised" that he was being terminated at the August 4, 2020 meeting. Am. Compl. ¶ 11. Because Assistant Superintendent Randall and Haddock were the

7

only other individuals present at the termination meeting, the Court understands Plaintiff's allegation to mean that either Assistant Superintendent Randall or Haddock made the termination decision at the meeting. This understanding is further bolstered by Plaintiff's allegation that the Board delegated the authority of employee termination to Assistant Superintendent Randall. *See id.* ¶ 13. But this allegation still fails to identify an official policy of Defendant. The Board clearly delegated at-will employee termination authority only to Superintendent Vroonland. *See* ECF No. 20 Ex. A. Moreover, Plaintiff has not pleaded facts identifying the author of his termination letter. *See* Am. Compl. ¶ 11. Plaintiff has failed to allege that either the Board or Superintendent Vroonland promulgated the decision to terminate Plaintiff. Conclusory allegations that Plaintiff was "provided a letter" or "was advised" of termination, without more, do not rise above the speculative level. Therefore, Plaintiff has failed to sufficiently plead facts indicating that the decision to terminate him was an official policy of Defendant.

Even if the decision to terminate Plaintiff was made by Assistant Superintendent Randall, as alleged by Plaintiff, Defendant nevertheless could be held liable under a theory of ratification. Ratification occurs when a policymaker "confirms, adopts, or fails to repudiate the acts" of a non-policymaking employee. *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 653 (5th Cir. 1994) ("[Ratification] means the adoption, confirmation or failure to repudiate prior unlawful acts which were not legally binding at a time when the [defendant] had the right and knowledge of facts necessary to repudiate such conduct; but which, by ratification or failure to repudiate, become the acts of the defendant." (citation omitted)).

Plaintiff alleges that the Boad "ratified the policy to terminate" him. *Id.* ¶ 13. But here too, Plaintiff does not plead facts indicating that Defendant's policymakers had any role in the termination decision. Plaintiff does not allege that the Board or Superintendent Vroonland even

knew of the termination decision. *See Prunty*, 16 F.3d at 654 ("[I]t is evident that before one can ratify an act so that it becomes his own, he must know of the act with which he is charged."). For example, Plaintiff does not indicate whether he chose to appeal his termination through the School District's three-level grievance process, which culminates with review by the Board. *See* Def.'s Reply [ECF No. 21] Ex. B. Had he appealed his termination through all three levels, the Board would have to make a decision on Plaintiff's termination. *See id.* But Plaintiff does not even allege that he initiated the appeal process. Thus, Plaintiff has failed to sufficiently plead facts indicating that Defendant's policymakers ratified the alleged termination decision of Assistant Superintendent Randall.

For the foregoing reasons, the Court finds Plaintiff has failed to adequately allege that Defendant's actions, through its duly enacted policies or customs promulgated by its policymakers, were the motivating force behind any alleged constitutional violations.

### B. *Violation of Constitutional Rights*

To state a § 1983 claim against Defendant, Plaintiff must not only establish a basis for municipal liability, but also the substantive elements of a First Amendment retaliation claim. *See Flagg Bros., Inc.*, 436 U.S. at 155; *Cornish*, 402 F.3d at 549. Even if Plaintiff had successfully established a basis for municipal liability, the Court finds that he has not established a First Amendment retaliation claim.

"To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Nixon v. City of Houston*,

511 F.3d 494, 497 (5th Cir. 2007)). Defendant challenges the First Amended Complaint only as to the second element.

Speech involves a matter of public concern if it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983); *see also Lane v. Franks*, 573 U.S. 228, 241 (2014); *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001). A matter of public concern is something that is a subject of legitimate news interest. *Oscar Renda Contracting, Inc. v. City of Lubbock*, 463 F.3d 378, 382 (5th Cir. 2006). Speech relates to a matter of public concern if it contributes to an informed dialogue in a democratic society or informed opinions on important public issues. *Shatkin v. Univ. of Texas at Arlington*, No. 4:06-cv-882-Y, 2009 WL 614788, at *4 (N.D. Tex. Mar. 10, 2009) (citing *City of San Diego v. Roe*, 543 U.S. 77, 82-83 (2004)). The Court must consider the "content, form, and context of a given statement, as revealed by the whole record." *Teague v. City of Flower Mound*, 179 F.3d 377, 380 (5th Cir. 1999).

Plaintiff asserts that his three social media posts were "political posts" that "dealt with race." Am. Compl. ¶ 8. He claims that these posts "centered on racial tensions" and "matters of public concern," and were made during an "extraordinary" time when "[s]ocial and racial unrest in the United States during the summer of 2020 triggered protests and riots across the country." *Id.* ¶¶ 8, 18.

While the Court must accept well-pleaded facts as true, *Sonnier*, 509 F.3d at 675, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions," *Ferrer*, 484 F.3d at 780 (citation omitted). The Court does not accept Plaintiff's conclusion that the social media posts were on matters of public concern, because whether a statement addresses a matter of public concern is a question of law that must be resolved by the

10

Court. *See Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005). Moreover, because Plaintiff has not alleged the content of his social media posts, he offers no specific factual allegations beyond mere "labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Notably, while Plaintiff's entire claim revolves around these posts, he has failed to describe or include their contents in the record—even after having an opportunity to amend his complaint—beyond mere conclusory statements.

While the Fifth Circuit has found that the topic of racial discrimination may be a matter of public concern, *see Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008); *Victor v. McElveen*, 150 F.3d 451, 456 (5th Cir. 1998), there are no facts here that, if accepted as true, would determine whether Plaintiff's speech concerned racial discrimination. Mere assertions that speech "dealt with race" or "centered on racial tensions" are insufficient. The Court finds Plaintiff's allegations that his social media posts related to a matter of public concern do not rise above the speculative level. He has thereore failed to sufficiently plead a substantive element of a First Amendment retaliation claim.

## IV.  CONCLUSION

Accepting well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Brief. Despite having an opportunity to amend his complaint once, the Court **GRANTS** Plaintiff leave to file a second amended complaint by October 11, 2021. If an amended complaint is not filed within such time, this action will be dismissed with prejudice.

**SO ORDERED.**

SIGNED September 19, 2021.

*/s/ Karen Gren Scholer*
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**